# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELMAS R. BURKETT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) 02: 08-cv-0890 ) |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER OF COURT

**I.    Introduction**

Plaintiff Delmas R. Burkett ("Burkett") brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") partially denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") [42 U.S.C. §§ 401-433]. For the reasons that follow, the portion of the administrative decision at issue in this case will be reversed, and the case will be remanded to the Commissioner for a calculation of the benefits owed to Burkett.

**II.    Background**

Burkett was born on July 12, 1942. (R. 42). He is a high school graduate. (*Id.*). He has past relevant work experience as a fence erector.[1] He worked in that capacity until January 21, 2004, when he sustained a work-related injury. (R. 50).

Burkett protectively applied for DIB on April 5, 2004, alleging that he had become disabled on January 21, 2004. (R. 154-157). The state agency denied the application on September 13, 2004. (R. 107). Burkett responded on October 26, 2004, by filing a request for an

---

[1]The applicable regulation defining the term "past relevant work" provides: "Past relevant work is work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1).

1

administrative hearing. (R. 112). On September 20, 2005, an administrative hearing was held in DuBois, Pennsylvania, before Administrative Law Judge Douglas W. Abruzzo (the "ALJ"). (R. 36). Burkett, who was represented by counsel, appeared and testified at the hearing. (R. 38-97). Testimony was also taken from Irene Montgomery ("Montgomery"), an impartial vocational expert. (R. 75-94). In a decision dated February 15, 2006, the ALJ determined that Burkett had been "disabled" within the meaning of the Act since November 18, 2005, but that he had not been statutorily disabled prior to that date. (R. 17-26). The Appeals Council denied Burkett's request for review on April 25, 2008, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. 6). Burkett commenced this action against the Commissioner on June 27, 2008, seeking judicial review of the portion of the administrative decision that had been unfavorable to him. (Doc. No. 1). The parties filed cross-motions for summary judgment on December 8, 2008. (Doc. Nos. 8 & 10). These motions are the subject of this memorandum opinion.

### III. Standard of Review

This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health and Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. §§ 423(d)(1), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the

3

claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S.Ct. 376, 157 L.Ed.2d 333 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

**IV.    Discussion**

Because the ALJ determined that Burkett was disabled as of November 18, 2005, only the period of time commencing on January 21, 2004, and ending on November 17, 2005, is presently at issue. It is undisputed that Burkett has not engaged in substantial gainful activity since his alleged onset date of January 21, 2004. In his decision, the ALJ found Burkett to be suffering from a fracture of the left knee and tibia, impingement of the L4 and L5 nerve roots, and a heart condition. (R. 22-23). Burkett's fracture of the left knee and tibia and impingement of the L4 and L5 nerve roots were deemed to be "severe" within the meaning of 20 C.F.R. §

4

404.1520(a)(4)(ii), while his heart condition was deemed to be "non-severe." (*Id.*). These impairments did not meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of Impairments"). (R. 23). In accordance with 20 C.F.R. § 404.1545, the ALJ assessed Burkett's residual functional capacity as follows:

> Upon careful consideration of the entire record, the undersigned finds that, prior to November 18, 2005; the claimant had the residual functional capacity to occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, and stand and walk for two-thirds of an eight-hour workday.
>
> However, his ability to engage in a full range of light work was reduced by a limitation to occasional stooping and climbing ramps and stairs and the need to avoid crawling or climbing ladders, ropes, or scaffolds. He was limited to occasional pushing and pulling with the lower extremities, to include the use of pedals unless such use requires less than five pounds exertion. He must avoid prolonged exposure to cold temperature extremes and extreme wetness/humidity. Due to reduced agility, he may not work with exposure to dangerous machinery and unprotected heights. If engaged in sedentary work, he would need a sit/stand option that permits him to take four or five steps away from his work station during a one minute period up to five times per hour.

(*Id.*). Based on this assessment, it was determined that Burkett had been able to return to his past relevant work as a fence erector prior to November 18, 2005, but that he had been unable to work as a fence erector as of that date. (R. 25-26). On that date, Burkett had been sixty-three years old, making him a "person of advanced age" within the meaning of 20 C.F.R. § 404.1563(e). (R. 26). Applying Medical-Vocational Rule 202.06, which is found in 20 C.F.R. Pt. 404, Subpt. P, App. 2, the ALJ concluded that Burkett had established the existence of a statutory disability beginning on November 18, 2005. (*Id.*).

The question in this case is whether "substantial evidence" supports the ALJ's conclusion that Burkett was not disabled between January 21, 2004, and November 17, 2005. Before his alleged onset date, Burkett worked as an on-site foreman for a company engaged in the erection of fences. (R. 49-50). On January 21, 2004, he sustained a work-related injury. A turnbuckle broke loose and struck him in the left knee, knocking him to the ground. (R. 270). This caused a fracture of his left knee and tibia. (R. 22). Burkett had been suffering from chronic pain in his lower back, which was evidently exacerbated when he hit the ground. (R. 383). On November

4, 2004, he underwent a left cardiac catheterization. (R. 517-518, 537-538, 547, 563-564). Six days later, he was discharged in "satisfactory" condition. (R. 517). X-rays of Burkett's back taken on November 18, 2005, revealed the following:

> L4-5: Disc desiccation. Broad disc protrusion with a superimposed bi-foraminal disc protrusions. The right foraminal disc protrusion is large measuring 4 mm in A-P dimension resulting in abutment of the exiting right L4 nerve roots. Hypertrophic facet arthropathy is noted with a mild degree of central canal stenosis.

(R. 565). This finding is what triggered the ALJ's determination that Burkett was statutorily disabled as of November 18, 2005. (R. 25-26).

Under certain circumstances, it is permissible for the Commissioner to rely on medical-vocational guidelines to make disability determinations. *Heckler v. Campbell*, 461 U.S. 458, 467-468, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). The ALJ concluded that, as of November 18, 2005, Burkett was "disabled" under Medical-Vocational Rule 202.06. (R. 26). At the hearing, Montgomery testified that the skills acquired by Burkett throughout his career as a fence erector were "industry specific," and that they were not transferable to other jobs.[2] (R. 81-82). The ALJ expressed the view that the case would turn on whether Burkett could return to his past relevant work, since Rule 202.06 would direct a finding of "disabled" if he could not. (R. 88, 95). In order for the ALJ to find that Burkett was not disabled, however, he did not necessarily need to find that Burkett could return to his previous work *as he had performed it*. It was sufficient for

---

[2]Montgomery's testimony was significant because it narrowed the scope of the ALJ's inquiry. The relevant portion of Title II provides:
> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). Since Burkett is a "person of advanced age," the Commissioner's regulations recognize that his age limits his ability to adjust to other work existing in the national economy. 20 C.F.R. § 404.1563(e). Moreover, a person of advanced age who is limited to sedentary or light work is presumed to be incapable of making an adjustment to other work unless he or she has skills that are transferable to other skilled or semi-skilled work, or unless he or she has recently completed an educational program designed to facilitate his or her direct entry into skilled work that is consistent with his or her residual functional capacity. 20 C.F.R. § 404.1568(d)(4). Because Burkett's skills were not deemed to be transferable, the disability inquiry was essentially limited to whether he could return to his past relevant work. (R. 88, 95).

the ALJ to find that Burkett could perform the duties of a fence erector as ordinarily required by employers in the national economy. *Rivera v. Barnhart*, 239 F.Supp.2d 413, 419-420 (D.Del. 2002). The ALJ made that clear to Burkett before the conclusion of the hearing. (R. 96).

The Act defines the term "disability" as an "*inability* to engage in any substantial gainful activity by reason of any medically determinable physical or mental *impairment* which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A)(emphasis added). The language providing for the twelve-month durational requirement modifies not only the word "impairment," but also the word "inability." *Barnhart v. Walton*, 535 U.S. 212, 214-222, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Consequently, Burkett could not establish the existence of a statutory disability merely by showing that he had been *unable* to perform the duties of a fence erector immediately after his injury, and that his *impairment* had lasted longer than twelve months. Instead, he was required to show that both his *impairment* (or *impairments*) and his *inability to work* had lasted for a period of at least twelve months.[3] *Id.* The ALJ's evaluation of the evidence must be viewed through that prism.

Relevant to the Court's analysis are the regulations defining the terms "sedentary work," "light work," and "medium work." Those regulations provide:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
> (b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do

---

[3] Burkett's hearing was held on September 20, 2005. (R. 36). The ALJ issued his decision on February 15, 2006. (R. 17, 26). Both the hearing and the issuance of the decision occurred more than one year after Burkett's work-related injury of January 21, 2004. In order to establish an onset date of January 21, 2004, Burkett had to show that both his impairment and his inability to work had already lasted longer than twelve months. *Barnhart v. Walton*, 535 U.S. 212, 222-225 (2002).

7

substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. (c) *Medium work*. Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. § 404.1567(a)-(c). In determining that Burkett had been able to "occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds, and stand and walk for two-thirds of an eight-hour workday" prior to November 18, 2005, the ALJ found Burkett to have been capable of performing light work. (R. 23). Of course, additional limitations decreased the range of light work that Burkett had been capable of performing, but the job of fence erector (which the ALJ found Burkett to have been capable of performing) was classified as a job in the "light" category. (R. 77).

On August 31, 2004, a non-treating, non-examining state agency physician opined that Burkett had the capacity to perform medium work. (R. 371, 377). Because the physician had neither treated nor examined Burkett, the ALJ gave his opinion "reduced weight." (R. 25). This was proper, since the United States Court of Appeals for the Third Circuit has stated that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993). No treating or examining source believed Burkett to have the capacity to engage in medium work, and the ALJ correctly discounted the opinion of the state agency physician.[4] *Dorf v. Bowen*, 794 F.2d 896, 901 (3d Cir. 1986)("We have consistently held that it is improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with testimony of the claimant's treating physician.").

---

[4]The Court does not mean to suggest that it is always improper to credit the opinion of a non-treating, non-examining physician. In certain instances, such an opinion may be of considerable value. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Nevertheless, the opinion of a non-treating, non-examining physician does not constitute "substantial evidence" to support a finding of non-disability when it conflicts with the opinions expressed by treating and examining physicians. *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008).

The remaining evidence contained in the record, however, does not provide support for the ALJ's conclusion that Burkett could have returned to work as a fence erector. It is undisputed that, immediately after the accident of January 21, 2004, Burkett could not return to work. Indeed, he was unable to ambulate. (R. 270). Treatment notes from his physical therapists indicate that by May 26, 2004, his fracture had healed. (R. 339). In June 2004, Burkett's therapists reported that Burkett was pleased with his progress. (R. 479-481). The ALJ appears to have placed significant reliance on the treatment notes written by Burkett's physical therapists in determining that Burkett had been capable of working as a fence erector. (R. 24). Nonetheless, those treatment notes do not support a finding that Burkett was capable of engaging in light work during the period of time in question. The fact that Burkett was progressing with his recovery does not necessarily mean that he was capable of returning to work. *Morales v. Apfel*, 225 F.3d 310, 319 (3d Cir. 2000).

In its recent decision in *Brownawell v. Commissioner of Social Security*, 554 F.3d 352, 357 (3d Cir. 2008), the United States Court of Appeals for the Third Circuit reversed an administrative decision that had been based on mischaracterizations of the evidence contained in the documentary record. Unfortunately, the ALJ's determination that Burkett was capable of working as a fence erector before November 18, 2005, appears to have been based on similar mischaracterizations of notations found in Burkett's medical records. The Court will examine some of these notations in detail.

In his opinion, the ALJ made the following observations:

> The evidence indicates that the claimant was making a normal recovery until August 20, 2004 at which time the claimant was to be released to return to work (Exhibit 7F). However, on August 23, 2004, Mr. Burkett hired an attorney (Exhibit 1B) and he suddenly took a serious downturn in his recovery without reasonable medical explanation (Exhibits 20F and 21F).

(R. 24). The ALJ concluded that, by August 20, 2004, Burkett had sufficiently recovered to enable him to return to work as a fence erector. (R. 25). This conclusion essentially limited Burkett's initial period of incapacitation after the work-related accident to seven months, which was insufficient to meet the Act's twelve-month durational requirement. 42 U.S.C. § 423(d)(1)(A).

9

The documentary record simply does not support the ALJ's assertion that Burkett "was to be released to return to work" on August 20, 2004. On that date, Dr. Douglas S. Fugate, a treating physician, reported as follows:

> Mr. Burkett had the form completed and it was marked on the form not to work until his next visit on 10/25/04. We will also have him obtain the functional capacity evaluation to see what his work capabilities are at this time. He is to return to see me in October as previously scheduled. He was given a note for the chiropractor that he can have unrestricted therapy for his knee.

(R. 346). It is not clear from this treatment note whether Burkett had Dr. Fugate complete the form indicating that he was unable to work, or whether Burkett had already completed the form *himself* before seeking Dr. Fugate's signature or acquiescence. In either case, however, Dr. Fugate did *not* indicate that Burkett "was to be released to return to work" on that occasion, nor did he release Burkett to return to work. (*Id.*). Indeed, Dr. Fugate stated as late as May 3, 2005, that Burkett was unable to return to work, and that he had been unable to work since January 23, 2004.[5] (R. 490). Dr. Fugate's treatment notes provide no support for the ALJ's conclusion that Burkett was capable of working from August 20, 2004, through November 17, 2005.

The ALJ also made the following comments in his opinion:

> In June, 2005, a resident reportedly witnessed a "whole leg spasm" (Exhibit 12F). However, there is no reasonable neurological explanation and no clear etiology for this event. Otherwise, the claimant had good physical and neurological examinations. EMG/NCV testing revealed mild denervation of paraspinal muscles and mild slowing in the gastrocneimus, accounting for neither claims of severe pain nor "whole leg spasm" (Exhibit 12F).

(R. 25). These observations were evidently based on treatment notations made by Dr. Megan H. Cortazzo on June 6, 2005, which stated:

> He started physical therapy in April of 2004. It was at that time that he developed left lower leg pain. His leg starts to "spasm". It tightens and cramps. He can help alleviate it by dorsiflexion his foot or by standing on it while it is spasms.
>
> \*\*\*

---

[5]After his injury of January 21, 2004, Burkett was treated in the emergency room at St. Mary's Medical Center. (R. 269-271). He was not seen by Dr. Fugate until January 23, 2004. (R. 365-366).

> I witnessed one of these spasms. His entire leg tightened and straightened out and plantarflexed. He cried out in pain and could not bend his leg. He asked me to dorsiflex his foot to relieve the pain. As I did so, I felt his foot pressing back into my hand. He then stood on his leg and the spasm stopped.
> Strength exam was inconsistent in the left lower extremity. At times he was unable to move his leg because of new onset spasm and at other times he had give way strength.

(R. 389). Dr. Cortazzo was not the only physician who witnessed "spasms" in Burkett's left leg. On April 28, 2005, Dr. Robin West reported that Burkett's "medial gastroc" had been "in complete spasm" during an examination. (R. 486). She stated that she had been "able to relax [Burkett] with dorsiflexion of his foot," but that his spasms were "intermittent and very severe." (*Id.*).

In his opinion, the ALJ made the following statement:

> In June, 2005, Dr. Langer, the state Workers' Compensation doctor, put the word "spasms" in quotation marks, questioning the accuracy of claimant's new complaint (Exhibit 21F).

(R. 25). The ALJ went on to accuse Burkett of "symptom magnification related to financial gain." (*Id.*). On May 6, 2005, Dr. Victoria M. Langa performed an independent medical examination of Burkett in connection with Burkett's claim for Workers' Compensation benefits. (R. 491-499). The ALJ's statement concerning "Dr. Langer" appears to be an improperly spelled reference to Dr. Langa.[6] A close reading of Dr. Langa's examination report reveals that Dr. Langa did not question the accuracy or reliability of Burkett's complaints of "spasms." Instead, she opined that Burkett's complaints of "residual knee instability" may have been due to a "chronic problem." (R. 497). While it is true that Dr. Langa put the word "spasms" in quotation marks, there is nothing in the examination report which indicates that she was questioning the veracity of Burkett's statements. (R. 496). It was improper for the ALJ to dismiss Burkett's complaints about spasms on the basis of his own skepticism about Burkett's motives. *Murphy v.*

---

[6] Dr. Langa's examination report is listed as Exhibit 21F in the list of exhibits contained in the administrative record. (R. 4). In his opinion, the ALJ cited Exhibit 21F immediately after his reference to "Dr. Langer." (R. 25).

11

*Astrue*, 496 F.3d 630, 634 (7th Cir. 2007)("We have recognized that an ALJ cannot play the role of doctor and interpret medical evidence when he or she is not qualified to do so.").

As in any case arising under the Act, what matters is whether the ALJ's assessment of Burkett's residual functional capacity is "supported by substantial evidence" within the meaning of § 405(g). The only evidence in the record supporting the ALJ's determination that Burkett was capable of performing light work during the relevant period of time is the opinion of the non-treating, non-examining physician that Burkett was capable of performing medium work.[7] (R. 371). As noted earlier, however, the opinion of a non-treating, non-examining physician does not constitute "substantial evidence" when it conflicts with the opinions of treating and examining physicians. *Brownawell*, 554 F.3d at 356-357.

Based on her independent medical examination of Burkett on May 6, 2005, Dr. Langa opined that Burkett could not lift more than ten pounds, and that he could lift up to ten pounds on only an occasional basis. (R. 499). This opinion constituted an assessment that Burkett was capable of performing only sedentary work. (R. 497-498). In a letter to Burkett's counsel dated May 9, 2005, Dr. Joseph J. Kernich, a treating physician, stated that he would be "very reluctant" to permit Burkett to return to his "physically demanding position" as a fence erector. (R. 384). Dr. Kernich referred Burkett for a functional capacity evaluation, which was ultimately conducted by occupational therapist Rebecca Piccolo ("Piccolo") on October 4, 2005. (R. 507-510). The evaluation led Piccolo to conclude that Burkett was unable to perform work at any exertional level, including sedentary work. (R. 508). In a letter dated May 16, 2005, Dr. West stated:

> At this point, I do not think that Mr. Burkett can return to his regular line of work. He had a work-related injury, which resulted in significant tenderness over his proximal tibia, diffuse quadriceps atrophy, and now subsequently calf spasms. I think all of these are related to the work injury. At this point, I have restricted him to no standing for greater than an hour a day, no kneeling, squatting, or pivoting to twisting on his knee. Since his work requires significant climbing and walking up and down uneven surfaces as well as driving a truck with a clutch, I do not think he will be able to return to this line of work. The significant quadriceps atrophy and patellar tendonitis do limit his climbing ability, especially descending ladders

---

[7] The applicable regulation makes it clear that a claimant who is capable of performing medium work is likewise capable of performing light work. 20 C.F.R. § 404.1567(c).

and hills. The proximal tibial pain limits his period of standing each day and now the calf spasms significantly contribute to his pain with any kind of activity, such as standing for long periods of time, kneeling, and squatting.

(R. 388). In addition, Burkett's chiropractor, R.W. McCall ("McCall"), stated that Burkett was unable to return to work. (R. 380-381). McCall also stated that Burkett was doing everything that he possibly could in order to improve his condition.[8] (R. 381).

The ALJ discounted some of the medical reports on the ground that they had been prepared specifically with Burkett's prior duties in mind, without regard to whether Burkett could perform the duties of other fence erector positions in the national economy. (R. 24). The Court acknowledges that the term "past relevant work" refers not only to the fence erection work that Burkett actually performed prior to his injury, but also to the functional demands of similar fence erector jobs existing in the national economy. *Rivera*, 239 F.Supp.2d at 419-420. Nevertheless, that does not change the calculus in this case. Montgomery testified that Burkett's past relevant work (both as he had actually performed it and as it was generally performed in the national economy) required an individual to stand or walk for approximately six hours during the course of an eight-hour workday. (R. 83). No treating or examining physician believed Burkett to be capable of such activity. Dr. West stated that Burkett could stand for no more than one hour per day. (R. 388). Dr. Langa indicated that Burkett could stand or walk on only an occasional basis, which was defined as up to roughly one-third of a workday. (R. 499). Both of these opinions were rendered in May 2005, which was after August 20, 2004 (i.e., the date on which the ALJ believed Burkett to have been capable of returning to work). (R. 25). Although the non-treating, non-examining state agency physician stated that Burkett could stand for six hours in an eight-hour workday, his opinion does not constitute "substantial evidence" in light of the countervailing opinions expressed by one treating physician and one independent examining physician. (R. 371); *Brownawell*, 554 F.3d at 357.

---

[8] The Court acknowledges that the opinion of a chiropractor is not entitled to as much weight as the opinion of a medical doctor. *Fisher v. Secretary of Health & Human Services*, 818 F.Supp. 88, 91 (D.Del. 1993). In this case, however, the opinion expressed by Burkett's chiropractor was consistent with the opinions expressed by several treating and examining physicians.

The evidence of record overwhelmingly indicates that Burkett was incapable of performing work at the light exertional level between January 21, 2004, and November 17, 2005. For this reason, the ALJ's assessment of Burkett's residual functional capacity with respect to that period of time is not "supported by substantial evidence." Under these circumstances, the Court has the power to enter a judgment reversing the decision of the Commissioner "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Based on her independent medical examination of May 6, 2005, Dr. Langa concluded that Burkett was capable of performing work at the sedentary level of exertion. (R. 497-499). If this case were amenable to further analysis at the fifth step of the sequential evaluation process, a remand for further administrative proceedings would be warranted.

In this case, however, further administrative proceedings would be futile. At the hearing, Montgomery testified that the skills acquired by Burkett during his career as a fence erector were "industry specific," and that they were not transferable to work at the sedentary level. (R. 82). The ALJ twice acknowledged that a finding of statutory disability was warranted unless it was determined that Burkett could return to his past relevant work. (R. 88, 95). Indeed, he found Burkett to be disabled as of November 18, 2005, precisely for that reason. (R. 25-26). Given his status as a "person of advanced age" during the relevant period of time, and because he had acquired no job-related skills during his time as a fence erector which were transferable to jobs at the sedentary level, a finding that Burkett could not have made an adjustment to other work existing in the national economy was compelled by the applicable regulation promulgated by the Commissioner. 20 C.F.R. § 404.1568(d)(4). The evidence of record clearly indicates that, between January 21, 2004, and November 17, 2005, Burkett was unable to return to his past relevant work as a fence erector. Accordingly, the proper remedy is to direct an award of benefits in favor of Burkett, and to remand this case to the Commissioner solely for the purpose of

calculating the amount of such benefits.[9] *Shultz v. Bowen*, 662 F.Supp. 1074, 1078 (E.D.Pa. 1986).

V.     **Conclusion**

Given the posture of this case, the narrow question before the Court is whether "substantial evidence" supports the ALJ's conclusion that Burkett had remained capable of working as a fence erector prior to November 18, 2005. Because all of Burkett's treating medical providers, as well as an independent medical examiner, expressed opinions contrary to the ALJ's finding, the administrative decision in this case is not "supported by substantial evidence." A remand for further development of the administrative record would be futile. For these reasons, the Court will grant the motion for summary judgment filed by Burkett (*Document No. 8*), deny the motion for summary judgment filed by the Commissioner (*Document No. 10*), and remand this case to the Commissioner solely for a calculation of the benefits to which Burkett was entitled between January 21, 2004, and November 17, 2005. An appropriate order follows.

McVerry, J.

cc:     Lee Karl, Assistant U.S. Attorney
        Email: lee.karl@usdoj.gov

        Querino R. Torretti, Esquire
        Email: pam_basinger@verizon.net

---

[9] Dr. Langa, an independent medical examiner who evaluated Burkett during the period of time in question, concluded that Burkett was incapable of performing work at the light exertional level. (R. 491-499). The ALJ has already concluded that Burkett was disabled as of November 18, 2005. (R. 25-26). There is no reason to believe that any after-the-fact consultative medical examinations could somehow establish that Burkett was capable of performing light work three and a half years ago. The most reliable pieces of medical evidence related to Burkett's residual functional capacity during the relevant period of time are the medical reports prepared during that period of time. Since the evidence of most concern to the Court would be left unchanged by further development of the administrative record, a remand for such development would be inappropriate. *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DELMAS R. BURKETT,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 02: 08-cv-0890 |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **COMMISSIONER OF SOCIAL** | ) |
| **SECURITY,** | ) |
| | ) |
| Defendant. | ) |

## ORDER OF COURT

AND NOW, this 15th day of April, 2009, in accordance with the foregoing memorandum opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that Plaintiff's Motion for Summary Judgment (*Document No. 8*) is **GRANTED**, Defendant's Motion for Summary Judgment (*Document No. 10*) is **DENIED**, that portion of the administrative decision of the Commissioner of Social Security that was unfavorable to the Plaintiff is **REVERSED**, and this case is remanded to the Commissioner solely for a calculation of the benefits owed to the Plaintiff under Title II of the Social Security Act [42 U.S.C. §§ 401-433] for the period of time commencing on January 21, 2004, and ending on November 17, 2005.

BY THE COURT:

sTerrence F. McVerry
United States District Court Judge

cc:  Lee Karl, Assistant U.S. Attorney
     Email: lee.karl@usdoj.gov

   Querino R. Torretti, Esquire
   Email: pam_basinger@verizon.net